OPINION
{¶ 1} Appellant, Shawn A. Mays ("Mays"), appeals the judgment entry of the Trumbull County Common Pleas Court convicting him of theft.
 {¶ 2} Mays was indicted by the grand jury for one count of theft, a violation of R.C. 2913.02(A)(1), and a felony of the fifth degree. The indictment alleged that he stole more than $500 worth of goods from a WalMart store. Mays entered a plea of not guilty to the charge. His case was tried to a jury, which found him guilty as charged on August 2, 2005.
 {¶ 3} On August 25, 2005, Mays was sentenced to eleven months in prison, plus the possibility of post-release control of up to three years.
 {¶ 4} Mays filed a timely appeal to this court, raising a single assignment of error, which is as follows:
 {¶ 5} "The appellant's convictions [sic] are against the manifest weight of the evidence."
 {¶ 6} In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has provided the following guidance for reviewing courts:
 {¶ 7} "`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'"[1]
 {¶ 8} The weight to be given to the evidence and the credibility of the witnesses are primarily matters for the jury to decide.[2]
 {¶ 9} The first witness for the state of Ohio was WalMart's Loss Prevention Officer Ramsey. Ramsey testified that on January 11, 2005, at approximately 7:00 p.m., he was on duty inside the WalMart store in Trumbull County, Ohio. At that time, he noticed Mays place a shirt or jacket over three DVD players that he had in his shopping cart. Ramsey continued to observe Mays throughout the store and observed him place two more DVD players in his cart. He also observed him place a comforter set over all five DVD players. Next, Ramsey observed Mays proceed to the lawn and garden department. At that time, Ramsey summoned two assistant managers, Assistant Manager Keleman and Assistant Manager Rickles. Ramsey directed Rickles to go outside and observe whether Mays would pass the DVD players under a temporary wall to the outside. A short time later, Rickles radioed to Ramsey that the five DVD players were being passed to the outside. Because there were obstructions in his way, Ramsey did not personally observe Mays pass the DVD players underneath the temporary wall. Mays then proceeded to the pet department, abandoned the shopping cart, and went outside. Ramsey followed Mays to the sidewalk outside the store and asked him to return to the store to deal with some unpaid merchandise. At first, Mays cooperated and returned to the store vestibule, though he denied that he had failed to pay for any merchandise. Mays then refused to cooperate any further and turned to walk out of the vestibule. A scuffle with Ramsey ensued, Mays then left for the parking lot, but was detained by two store employees and an off-duty policeman, and he was brought back into the store until the police arrived.
 {¶ 10} Ramsey testified that the retail value of the DVD players was $1,166. He also testified that a photograph of the five DVD players was taken immediately after they were recovered. The photograph was admitted into evidence.
 {¶ 11} The state's two other witnesses were Keleman and Rickles. Keleman testified that he observed Mays in the lawn and garden department with the merchandise in his cart. Rickles testified that he observed someone pass the five DVD players underneath the temporary wall to the outside.
 {¶ 12} Mays did not testify.
 {¶ 13} As part of the trial court's instructions to the jury on the elements of a theft offense, the court charged on the element of "exerting control" as follows:
 {¶ 14} "Exert control: The least removing [of the] property taken with the purpose of depriving the owner of that property is sufficient exertion of control over property. The thief must obtain entire and absolute possession of the property only for an instant. The goods need not be removed from the premises of the owner. The goods need not be retained in the possession of the thief."[3]
 {¶ 15} We have reviewed the entire record, have weighed the evidence, including all reasonable inferences therefrom, and have considered the credibility of the witnesses, and we find that there is no conflicting evidence.
 {¶ 16} The evidence in favor of guilt was both direct and circumstantial. The direct evidence included Ramsey's observations of Mays putting the DVD players and other merchandise in his cart and then proceeding to the lawn and garden department, Keleman's observation of Mays by himself in the lawn and garden department with the cart full of DVD players, and Ramsey's testimony that the DVD players had a value of $1,166.
 {¶ 17} The circumstantial evidence was that at the time Ramsey and Keleman were observing Mays in the lawn and garden department, Rickles observed someone pass the five DVD players underneath the temporary wall to the outside.
 {¶ 18} "Circumstantial evidence and direct evidence inherently possess the same probative value. * * * [C]ircumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt. Nothing more should be required of a factfinder."[4]
 {¶ 19} We believe that based upon the direct and circumstantial evidence, the jury was permitted to find as it did, that Mays exerted control over the DVD players and that his purpose in doing so was to steal them. We do not accept that the jury lost its way or that there was a manifest miscarriage of justice in its verdict.
 {¶ 20} The assignment of error is without merit.
 {¶ 21} The judgment of the trial court is affirmed.
Donald R. Ford, P.J., Colleen Mary O'Toole, J., concur.
[1] (Citations omitted.) State v. Thompkins (1997),78 Ohio St.3d 380, 387. See, also, State v. Thomas, 11th Dist. No. 2004-L-176, 2005-Ohio-6570, at ¶ 27-29.
[2] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
[3] See State v. Williams (1984), 16 Ohio App.3d 232, 234.
[4] (Citations omitted.) State v. Jenks (1991),61 Ohio St.3d 259, 272. See, also, State v. Pistillo, 11th Dist. No. 2003-L-183, 2004-Ohio-6333, at ¶ 22.