The STATE of Ohio, Appellee,

v.

POWELL, Appellant.

[Cite as *State v. Powell* (1993), 87 Ohio App.3d 157.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 62072.

Decided April 12, 1993.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Edward Feran,* Assistant Prosecuting Attorney, for appellee.

*David L. Doughten,* for appellant.

KRUPANSKY, Judge.

Defendant-appellant Darren Leon Powell appeals from his jury convictions for possession of three times the bulk amount of cocaine in violation of R.C. 2925.03(A)(6) with an accompanying firearm specification pursuant to R.C. 2941.141, trafficking in cocaine in violation of R.C. 2925.03(A)(2), possession of criminal tools (money, gun and pager) in violation of R.C. 2923.24, and carrying a concealed weapon in violation of R.C. 2923.12.

Defendant was indicted by the Cuyahoga County Grand Jury on the four charges March 8, 1990. The charges stem from an incident in the evening of December 19, 1989 when Cleveland police detectives recovered a plastic vial containing ninety-seven rocks of crack cocaine weighing 17.5 grams, a loaded Browning .9mm semi-automatic pistol, a Motorola electronic telephone pager and $435 in unspecified U.S. currency at East 102nd Street and St. Clair Avenue. The case against defendant proceeded to a jury trial commencing April 15, 1991.

The prosecution presented testimony from three witnesses to support the four charges, *viz.,* Cleveland Police narcotics detectives Kenneth Patterson and Mi-

chael Carosielli, and scientific examiner Charles Sikora. Detective Patterson testified that he was one of a five-member patrol responding on the evening of December 19, 1989 to complaints from the Mayor's office regarding drug sales and use in the neighborhood of East 102nd Street and St. Clair Avenue in the city of Cleveland. Patterson stated that he and detective Carosielli were passengers in an unmarked 1985 Blue LTD sedan driven by Sgt. Gercar which was followed by detectives Shoulders and Whitney in a separate vehicle.

Patterson stated that the neighborhood of East 102nd Street and St. Clair Avenue is a high drug sales and use area. Patterson stated that while riding east on St. Clair toward the intersection of these two streets, he observed a vehicle parked in the middle of East 102nd Street with its engine running and five males standing near the passenger side. Patterson believed based upon his observations that he was witnessing a drug transaction. Someone yelled "vice" as his undercover police car turned the corner and approached the scene. The vehicle which had been parked in the street hurriedly drove north on East 102nd Street and the five pedestrians departed. Four of the pedestrians fled north on East 102nd Street, and the fifth pedestrian, later identified as defendant, headed east toward a parked car. Detective Patterson testified that he continued observing defendant without interruption and saw defendant drop two objects from his right hand to the ground approximately ten to twelve or fifteen feet in front of the undercover police car.

Detective Carosielli testified that he also observed defendant throw two objects to the ground. Carosielli stated that defendant tossed the first object with his right hand and then reached into his jacket near the waistband and discarded a gun. Carosielli recovered a clear vial with a red cap containing ninety-seven rocks of suspected crack cocaine and a .9mm pistol loaded with thirteen rounds of ammunition including one in the chamber. The objects were under the bumper of a parked car three to four feet from where defendant was apprehended. The officers arrested defendant and discovered an electronic telephone pager and $435 in U.S. currency on his person after conducting a patdown search prior to placing defendant in the unmarked police car.

Charles Sikora, a scientific examiner with the Scientific Investigation Unit ("SIU"), testified that the material contained in the vial recovered by the police and submitted to him weighed a total of 17.5 grams. Sikora stated that he conducted two chemical tests on a representative random sample of ten of the ninety-seven rocks in the vial according to the standard "square root method" and that each sample rock tested positive for cocaine, a Schedule II controlled substance. Sikora also testified that he test-fired the .9mm pistol and determined that it was operable. The prosecution rested its case following the

introduction into evidence of the plastic vial containing the cocaine, the .9mm pistol, Motorola pager, and SIU lab report.

The defense presented two witnesses following the denial of his Crim.R. 29 motion for judgment of acquittal on all the charges, *viz.*, defendant and his friend, Donna Johnson. Johnson and defendant testified that someone in the vehicle parked in the middle of the street asked defendant if he was interested in purchasing a gun after he left the African Room bar at the corner of East 102nd Street and St. Clair Avenue. According to their testimony, someone yelled "vice" as defendant approached the parked vehicle, and the vehicle and pedestrians fled the scene. Defendant, his companion from the bar Denzel Ward, and Johnson remained on the scene. Defendant denied possessing the plastic vial containing the cocaine or pistol recovered by the police.

The jury returned from its deliberations April 17, 1991 with a verdict finding defendant guilty on all four counts of the indictment, *viz.:* (1) possession of three times the bulk amount of cocaine in violation of R.C. 2925.03(A)(6) with the accompanying firearm specification pursuant to R.C. 2941.141; (2) trafficking in cocaine in violation of R.C. 2925.03(A)(2); (3) possession of criminal tools (money, gun and pager) in violation of R.C. 2923.24; and (4) carrying a concealed weapon in violation of R.C. 2923.12. The trial court thereafter sentenced defendant to the following concurrent terms of imprisonment, *viz.:* (1) four to fifteen years on count one with three years' actual imprisonment; (2) one year on count two; (3) one year on count three; and (4) one and one-half years on count four; in addition to three years' prior actual incarceration on the firearm specification. Defendant timely appeals raising four assignments of error.

Defendant's first and second assignments of error raise constitutional questions as follows:

"R.C. § 2925.03(A)(6) and R.C. § 2925.01(E)(1) are unconstitutionally vague and therefore are violative of the Due Process Clauses of the United States and Ohio Constitutions.

"R.C. § 2925.03(A)(6) and R.C. § 2925.01(E)(1) are constitutionally inviolate [*sic*] as the statutes are violative of the Equal Protection and Due Process Clauses of both the Ohio and the United States Constitutions."

Defendant's first and second assignments of error lack merit.

Defendant contends that R.C. 2925.03(A)(6), the statute defining the crime of possessing in excess of three times the bulk amount of a controlled substance, and R.C. 2925.01(E)(1), the statute defining the bulk amount of the controlled substance cocaine, are unconstitutionally vague and violate equal protection since the crime may be based upon either the physical weight or unit dose of the controlled substance possessed by the defendant at the whim of the prosecution.

Defendant complains these statutes grant the prosecution discretion to file charges of different magnitudes against an accused who possesses the same physical quantity of a controlled substance when either the total physical weight or total unit doses of the controlled substance do not qualify as three times the bulk amount. Defendant's claim is based upon the fact that the total physical weight of the ninety-seven rocks of crack cocaine in the case *sub judice* amounted to 17.5 grams, which is less than three times the bulk amount of thirty grams for cocaine, but that the ninety-seven rocks may exceed three times the bulk amount of seventy-five unit doses.[1]

As noted by defendant, R.C. 2925.03(A)(6) defines the offense of drug trafficking based on the possession of a specified quantity of a controlled substance and provides as follows:

"(A) No person shall knowingly do any of the following:

" * * * *

"(6) Possess a controlled substance in an amount equal to or exceeding three times the bulk amount, but in an amount less than one hundred times that amount * * *."

R.C. 2925.01(A) defines the term "controlled substance" as used in this provision by incorporating R.C. 3719.01, which provides in pertinent part as follows:

"(D) 'Controlled substance' means a drug, compound, mixture, preparation, or substance included in schedule I, II, III, IV, or V."

R.C. 3719.41 identifies cocaine, such as the crack cocaine in the case *sub judice*, as a Schedule II controlled substance.

R.C. 2925.01(E)(1) in turn defines the term "bulk amount" as used in R.C. 2925.03(A)(6) for the controlled substance cocaine as follows:

"An amount equal to or exceeding ten grams or twenty-five unit doses of a compound, mixture, preparation, or substance which is, or which contains any amount of, a schedule I opiate or opium derivative, or cocaine * * *."

R.C. 2925.01(F) defines the "unit dose" measure of the bulk amount, as an alternative to the physical weight, as follows:

" 'Unit dose' means an amount or unit of a compound, mixture, or preparation containing a controlled substance, such amount or unit being separately identifiable and in such form as to indicate that it is the amount or unit by which the controlled substance is separately administered to or taken by an individual."

---

1. The "bulk amount" of cocaine is defined by R.C. 2925.01(E)(1) as ten grams or twenty-five unit doses.

Applying these statutory definitions under the circumstances of the case *sub judice* dictates that thirty grams or seventy-five unit doses constitute three times the bulk amount of cocaine. Accordingly, R.C. 2925.03(A)(6) prohibits knowingly possessing such an amount of cocaine.

Defendant contends that since the plastic vial in the case *sub judice* contained only 17.5 grams of crack cocaine, which is less than three times the bulk amount when measured by total weight, but ninety-seven separate "rocks," which is greater than three times the bulk amount measured by unit dose, the statutory scheme improperly permits the prosecution to file charges of different magnitudes based on the same acts without sufficient notice to the accused as to which particular trafficking offense he is committing. In this particular case, defendant argues the prosecution could charge either of the following two offenses based upon the same facts, *viz.:* (1) the greater offense of possession of cocaine in an amount greater than three times the bulk amount (by unit dose) in violation of R.C. 2925.03(A)(6); or (2) the lesser offense of possession of cocaine in an amount greater than the bulk amount but less than three times the bulk amount (by weight) in violation of R.C. 2925.03(A)(4).

### Void for Vagueness Due Process Claims

The record demonstrates that defendant's constitutional claims in the trial court were based upon his contention that the term "unit dose" as defined by R.C. 2925.01(F) was "vague." As noted above, R.C. 2925.01(F) defines the term "unit dose" as follows:

" 'Unit dose' means an amount or unit of a compound, mixture, or preparation containing a controlled substance, such amount or unit being separately identifiable and in such form as to indicate that it is the amount or unit by which the controlled substance is separately administered to or taken by an individual."

The Ohio Supreme Court has recognized in this context that all legislative enactments of the General Assembly, including penal statutes, "must be afforded a strong presumption of constitutionality." *State v. Collier* (1991), 62 Ohio St.3d 267, 269, 581 N.E.2d 552, 553; R.C. 1.47. The *Collier* court noted that the party challenging the constitutionality of such a statute must demonstrate the unconstitutionality of the statute beyond a reasonable doubt in order to prevail. *Id.*

Although *Collier* involved a "void for vagueness" challenge to the R.C. 2925.11 drug abuse statute rather than the R.C. 2925.03 drug trafficking statute as in the case *sub judice*, we nevertheless find its reasoning to be instructive. The court recognized that the "void for vagueness" doctrine serves the following three purposes, *viz.:* (1) to provide fair warning to ordinary citizens to enable them to conform their conduct to the dictates of the statute; (2) to prevent

arbitrary and discriminatory enforcement of the statute; and (3) to avoid unduly burdening constitutionally protected conduct. *Id.*

Defendant has failed to demonstrate the term "unit dose" as set forth in R.C. 2925.01(F) is unconstitutionally vague beyond a reasonable doubt in the case *sub judice* under the standard set forth in *Collier, supra.* This court has previously rejected "void for vagueness" due process arguments similar to those raised in defendant's first and second assignments of error in the case *sub judice.* See *State v. Nelson* (Oct. 10, 1991), Cuyahoga App. No. 61344, unreported, at 1, 1991 WL 205418, and *State v. Webster* (May 21, 1981), Cuyahoga App. No. 42778, unreported, at 2–5, 1981 WL 4982. We find the statutory definition of "unit dose" as applied to each single "rock" of crack cocaine in the case *sub judice,* like each of the one hundred single tablets of LSD in *State v. Webster, supra,* requires absolutely no guesswork to determine that one rock constitutes one unit dose. *Id.* at 5.

The testimony in the case *sub judice* indicates that individual rocks of crack cocaine are designed for ready use and constitute the standard premeasured single serving quantity for the sale and consumption of crack cocaine. Detective Carosielli testified based upon his experience investigating illegal drug sales that rocks of crack cocaine such as in the case *sub judice* are routinely sold individually on the street for $20 to $25 dollars each. Carosielli stated that one rock constitutes one dose and that a single rock would be smoked at a time in a straightshooter.[2] Charles Sikora, a scientific examiner for the forensic unit of the Cleveland Police Department, examined the rocks in the case *sub judice* and testified as follows:

"I removed the contents from the vial and examined it to make sure that all the pieces were alike and similar approximately the same size, the same coloring and the same make-up."

Defendant's appellate brief apparently raises an additional argument for the first time that the R.C. 2925.01(E)(1) definition of "bulk amount," which is incorporated into the drug trafficking statutes and includes both weight and unit dose measurements for controlled substances, is unconstitutionally vague since the provisions do not specify any single prescribed standard of conduct. However, defendant's failure to specifically raise this contention in the trial court warrants rejecting the claim. See *State v. Awan* (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277; *State v. Nelson, supra.*

---

**2.** The record demonstrates that a "straightshooter" is essentially a straight pipe made usually from glass tubing.

■ Moreover, even if properly raised, such an argument would be rejected under the circumstances of this case since both R.C. 2925.03(A)(6) and 2925.-01(E)(1) provide adequate notice and fair warning to persons of ordinary intelligence to enable them to conform their conduct to the dictates of these drug trafficking statutes. The average person reading these provisions would recognize in this context that the prohibited conduct is knowingly possessing a physical quantity of cocaine which amounts to or exceeds either (1) thirty grams or (2) seventy-five unit doses. The term defining the prohibited quantity is not "vague" since the quantity specified in the provision is specifically defined and limited to only two precise alternative objective criteria. Defendant does not argue the prohibited quantity as measured by total weight in grams is "vague" and, as discussed above, application of the "unit dose" measurement to each individual rock is not vague.

Neither of the two individual criteria of grams or unit doses is vague nor becomes vague by prescribing alternate measurements for the same physical quantity of controlled substances. Persons of ordinary intelligence would recognize the statutory provisions prohibit possessing an amount of controlled substances which is equal to or exceeds the specified weight or unit dose. An individual is adequately informed in advance that his conduct does not violate these provisions, R.C. 2925.03(A)(6), 2925.01(E)(1) and 2925.01(F), if he possesses an amount of cocaine which is less than thirty grams or less than seventy-five unit doses.

■ It is conceivable, as defendant argues, that the prosecution could charge a defendant with possession of cocaine in an amount greater than three times the bulk amount (by dosage) under R.C. 2925.03(A)(6) or possession of an amount greater than the bulk amount but less than three times the bulk amount (by weight) under R.C. 2925.03(A)(4) based upon the same physical quantity of cocaine.[3] However, the existence of prosecutorial discretion concerning which offense to charge when two statutes prohibit the same conduct is not unconstitutional unless defendant demonstrates such discretion is exercised to impermissibly discriminate against a particular class of persons to which he belongs. *State v. McDonald* (1987), 31 Ohio St.3d 47, 49–50, 31 OBR 155, 156–157, 509 N.E.2d 57, 59–60; *State v. Tanner* (1984), 15 Ohio St.3d 1, 4, 15 OBR 1, 3, 472 N.E.2d

---

3. It should be noted, however, that both reported cases cited by the parties in this context involve prosecutions for the greater possession offense when the amount of the controlled substance recovered from the defendant exceeded the requisite "bulk amount" when measured by the unit dose measurement but not by weight. See *State v. McCoy* (1989), 63 Ohio App.3d 644, 579 N.E.2d 756; *State v. Howell* (1981), 5 Ohio App.3d 92, 5 OBR 206, 449 N.E.2d 523.

689, 692. The trial court specifically recognized, and defense counsel conceded that no such evidence was presented in the case *sub judice.*

### Equal Protection

■ Defendant's second assignment of error likewise raises for the first time on appeal the contention that R.C. 2925.03(A)(6) and 2925.01(E)(1) violate constitutional equal protection guarantees. However, as noted above, the record demonstrates defendant raised only the "void for vagueness" due process constitutional challenge in the trial court and the term "equal protection" appears nowhere in the record. Defendant's failure to properly raise this "equal protection" argument in the trial court is likewise sufficient to warrant rejecting this claim. *State v. Awan, supra; State v. Nelson, supra.*

Moreover, even if such an "equal protection" constitutional argument had been raised in the case *sub judice,* such an argument would properly have been rejected under the circumstances of this case. First, this court has previously rejected defendant's equal protection arguments in *State v. Webster, supra.* Accord *State v. Draughn* (Mar. 3, 1987), Montgomery App. No. CA–9664, unreported, 1987 WL 7511. Finally, as noted by the trial court, the record contains no evidence to support a claim of discriminatory enforcement in the case *sub judice.*

Accordingly, defendant's first and second assignments of error are overruled.

Defendant's third assignment of error follows:

"The evidence is insufficient to sustain convictions of R.C. § 2925.03(A)(2) and possession of criminal tools pursuant to R.C. § 2923.24."

Defendant's third assignment of error lacks merit.

Defendant contends the prosecution did not present sufficient evidence to support his convictions for trafficking in drugs in violation of R.C. 2925.03(A)(2) and for possession of criminal tools (money, gun and pager) in violation of R.C. 2923.24.

This court recently rejected this argument in a similar case involving evidence of an aborted drug sale in *State v. Chappell* (Apr. 16, 1992), Cuyahoga App. No. 60366, unreported, 1992 WL 80050. The *Chappell* court applied the following familiar test governing the sufficiency of the evidence set forth in *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717:

" '[T]he test is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry

about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. *Jackson v. Virginia* (1979), 443 U.S. 307, 319 [99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573] * * *.'" *Chappell, supra,* at 6, (quoting *State v. Martin, supra,* 20 Ohio App.3d at 175, 20 OBR at 218–219, 485 N.E.2d at 720).

Based upon our review of the record *sub judice* in compliance with this standard, construing the evidence in the light most favorable to the prosecution we find any rational trier of fact could have properly found defendant committed both offenses charged beyond a reasonable doubt.

R.C. 2925.03 defines the crime of drug trafficking and provides in pertinent part as follows:

"(A) No person shall knowingly do any of the following:

" * * *

"(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe such drug is intended for sale or resale by the offender or another."

As in *Chappell, supra,* defendant in the case *sub judice* contends the prosecution did not present any evidence that he committed any element of trafficking under R.C. 2923.03(A)(2).

However, under the totality of the circumstances, when viewed in the light most favorable to the prosecution, the jury could reasonably infer from the evidence presented in the case *sub judice* that defendant knowingly prepared for shipment, shipped, transported, delivered, prepared for distribution or distributed cocaine knowing or having reasonable cause to believe the cocaine was intended for sale or resale in violation of R.C. 2925.03(A)(2). In fact, the evidence presented by the prosecution, if believed, indicated substantially more than defendant's mere possession of cocaine or a single isolated aborted cocaine sale, but that defendant was engaged and regularly dealt in the business of drug sales for profit. The prosecution presented direct eyewitness testimony from narcotics officers indicating they apprehended defendant while he was engaged in liquidating a large inventory of readily transferable individual rocks of crack cocaine conveyed or transported by defendant to a territory of high drug sales activity. Such evidence amply supported the charge of drug trafficking in violation of R.C. 2925.03(A)(2).

The prosecution likewise presented sufficient evidence when construed in the light most favorable to the prosecution from which any rational trier of fact could reasonably find defendant possessed or controlled $435 in currency, the .9mm

pistol and/or telephone pager with purpose to use them criminally. The prosecution need only prove the illegal possession of one criminal tool to sustain a conviction for possessing criminal tools in violation of R.C. 2923.24. *State v. McShan* (1991), 77 Ohio App.3d 781, 784, 603 N.E.2d 1076, 1078. Defendant admitted to possessing the currency and telephone pager in the case *sub judice,* but denies the sufficiency of the evidence to demonstrate criminal purpose for all of the items recovered by the police.

R.C. 2923.24 defines the crime of possession of criminal tools in pertinent part as follows:

"(A) No person shall possess or have under his control any substance, device, instrument, or article, with purpose to use it criminally."

This court has held that evidence the defendant knowingly transported, delivered or distributed drugs may be used by the jury to reasonably conclude that money possessed by the defendant was used to facilitate drug transactions as a criminal tool, such as for the purpose providing any necessary change during drug sales, in violation of R.C. 2923.24. *State v. Reese* (Aug. 18, 1988), Cuyahoga App. No. 54105, unreported, 1988 WL 88338. The prosecution's failure to introduce the actual currency seized from the defendant into evidence in the case *sub judice* is not fatal to the conviction. See *State v. Williams* (1984), 16 Ohio App.3d 232, 16 OBR 248, 475 N.E.2d 168.

■ Moreover, as in *McShan, supra,* the evidence presented by the prosecution concerning defendant's involvement in the aborted drug sale at East 102nd Street and St. Clair Avenue, together with the testimony concerning the frequency of use of telephone pagers to arrange for illegal drug sales, was sufficient to sustain a conviction for possession of the telephone pager. *Id.,* 77 Ohio App.3d at 784, 603 N.E.2d at 1078. Similar reasoning disposes of defendant's contention concerning the loaded .9mm pistol detectives Patterson and Carosielli observed defendant pull from his waistband and discard on the ground as they arrived on the scene. Under the circumstances, the totality of the evidence revealed the drugs, pager, loaded pistol and money constituted tools of defendant's drug trade beyond a reasonable doubt.

Accordingly, defendant's third assignment of error is overruled.

Defendant's fourth assignment of error follows:

"The offenses of possession of cocaine, R.C. § 2925.11 [*sic* ], and drug trafficking, R.C. § 2925.03 are allied offenses of similar import within the contemplation of Ohio Revised Code § 2941.25."

Defendant's fourth assignment of error lacks merit.

Defendant contends the trial court improperly failed to merge his convictions for possession of cocaine in violation of R.C. "2925.11" [*sic*] and drug trafficking in violation of R.C. 2925.03(A)(2).

However, the record indicates defendant failed to raise this allied offense argument in the trial court in the case *sub judice*. As a result, the Ohio Supreme Court has held that any claim of error is deemed to be waived. *State v. Comen* (1990), 50 Ohio St.3d 206, 211, 553 N.E.2d 640, 645. We note that defendant has not argued and, therefore, necessarily failed to demonstrate the existence of plain error concerning the sentences imposed by the trial court for possession and trafficking in cocaine.

The record demonstrates that, contrary to defendant's assignment of error, defendant was not charged or convicted of violating R.C. 2925.11, which involves knowingly obtaining, possessing or using a controlled substance. Rather, defendant was charged and convicted of violating R.C. 2925.03(A)(6) which prohibits knowingly possessing three times the bulk amount of a controlled substance.

R.C. 2925.03(A)(2), the other drug trafficking offense defendant was found to have committed in the case *sub judice*, provides as follows:

"No person shall knowingly do any of the following:

" * * *

"(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe such drug is intended for sale or resale by the offender or another."

This court has rejected defendant's argument in the case *sub judice* that an offense of possession of drugs in violation of R.C. 2925.11 is allied with the offense of drug trafficking in violation of R.C. 2925.03(A)(6). *State v. Cordero* (July 23, 1992), Cuyahoga App. No. 61030, unreported, 1992 WL 173287. This court has applied the same reasoning when holding that trafficking in violation of R.C. 2925.03(A)(6), as defendant was in fact charged with and found to have committed in the case *sub judice*, does not constitute an allied offense with trafficking in violation of R.C. 2925.03(A)(2) pursuant to R.C. 2941.25. *State v. Pall* (Sept. 12, 1991), Cuyahoga App. No. 59232, unreported, 1991 WL 180070; *State v. Mateo* (Aug. 17, 1989), Cuyahoga App. No. 55833, unreported, 1989 WL 95760, reversed in part and affirmed in part on other grounds (1991), 57 Ohio St.3d 50, 565 N.E.2d 590. The *Mateo* court stated in this context as follows:

"R.C. 2941.25(A) prohibits convictions for two or more allied offenses of similar import. In determining whether a defendant is charged with allied offenses of similar import, a two-part test is employed. First, the elements of the crimes charged are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import. Second, the court must determine if the crimes were committed separately, or with a separate animus. If so, the defendant may be convicted of both offenses. See *State v. Blankenship* (1988), 38 Ohio St.3d 116, 117 [526 N.E.2d 816, 817].

"Both R.C. 2925.03(A)(2) and (6) have possession of a controlled substance as a requisite element of the separate offenses. However, R.C. 2925.03(A)(2) imposes the additional element that possession of the controlled substance is incident to preparation for shipment, transportation, delivery or distribution of the drug through a sale. Since the elements of R.C. 2925.03(A)(2) and (6) do not correspond, they are not allied offenses of similar import." *Id.* at 5.

As set forth above, the offense of drug trafficking defined by R.C. 2925.03(A)(2) requires proof of more than the mere "possession" of a controlled substance. Rather, drug trafficking under this provision requires demonstrating some form of the proscribed trafficking conduct incident to a drug sale. *State v. Mateo, supra.* As a result, a defendant may be convicted and sentenced for both the possession and trafficking of the same physical quantity of drugs, even if there is no evidence demonstrating a completed drug sale, when there is sufficient evidence that defendant committed any of the elements of drug trafficking incident to an aborted sale.

Accordingly, defendant's fourth assignment of error is overruled.

*Judgment affirmed.*

John F. Corrigan, P.J., and Spellacy, J., concur.